Good morning, and may it please the court. I'm Assistant Federal Defender Craig Jerome appearing on behalf of Roland Kailihiwa. With the court's permission, I'd ask to reserve two minutes for rebuttal. This case, the totality of the circumstances in this case make two things clear from the record. The first thing is that K-9 Mervyn was not trained to be a sophisticated alert dog. Instead, he was trained to alert based on any level of odor, including fringe, residual, or trace odors. Counselor, are you asking us to re-weigh the facts from the three-day evidentiary hearing and reach a factual conclusion that is the opposite of what the district court found? No, Your Honor. I don't think that the district court actually made a finding on those. The district court found that the K-9 was thoroughly trained and was reliable with regard to his alerts. It sounds to me like you're asking us to reverse that factual determination. Where is the clear error here? What the court found was that the K-9 and his unproductive alerts were sort of validated by the fact that he had been trained to alert on trace or residual odor so that there were no . . . That doesn't mean that the dog is wrong. I mean, a dog can alert on a package that used to contain drugs, but there are no drugs in the package when the dog alerts on it. It doesn't mean that the dog is wrong. In fact, that's what the district judge found was that the dog was not wrong. That's not a false alert, even though there's nothing in the package. That's correct, Your Honor. So, where does that leave us? You're saying this dog is not a reliable K-9 detector, and the district court found just the opposite. Well, the problem is that this court's precedent also establishes that when there's a possibility of ready contamination or easy contamination and a dog is not trained in a sophisticated manner, then the dogs alert standing alone. When you say sophisticated manner, are you saying the dog needs to be trained so that it only alerts when there's something in the package? I don't know how you would ever train a dog. Well, you know, the case that deals with sophisticated dog training is the $22,474 case, which is a currency seizure case, where the evidence in that case was that the dog had been trained only to alert to specific products of cocaine and that he had been trained in such a way. But wasn't the problem with that case that, you know, we're dealing with currency in Los Angeles, and apparently 75% of the currency is tainted in some way by drug residue? Well, that's true. But in this case, there's also sort of uncontroverted testimony, including from the government's expert, that packages that are shipped from Southern California to Hawaii through the Postal Service are readily and easily contaminated, just like cash is in Los Angeles. Okay, but that doesn't necessarily mean that the alert is incorrect, counsel. The problem, as I see it, is this is a totality of the circumstances analysis, so we have to look at the fact that the dog alerted, plus the other factors that the postal inspector identified in the affidavit, which included the source, the fact that the package was densely packed, the fact that it was addressed for delivery with no signature required, all the things that are outlined in the affidavit, right? That's correct, Your Honor, and I would say that really the only thing that really made any difference in this case, in terms of probable cause, is the dog's alert. All of these . . . That's not what the district court found. The district court said, I'm applying a totality of the circumstances approach, and I'm going to look at the dog alert, plus all these other factors that are outlined in the affidavit. On that basis, I find that the magistrate judge could make a probable cause determination that there's a fair probability that when we open that package, we're going to find drugs in it. Isn't that the conclusion of the three-day evidentiary hearing? I mean, I think that's part of the conclusion, but I don't think the court, certainly the district court, I don't think put any real weight on the other things that were in the handbook. Well, he said he did. I mean, I don't know how . . . It's recited in his opinion. I don't know how to weigh Judge Seabright's factors here. I mean, he didn't say, I give the dog alert 51% and I give the densely packed package 10%. I mean, there's nothing like that. Well, I mean, let's look at those other factors, and certainly those factors standing alone wouldn't be sufficient for probable cause. This is why the law says totality of the circumstances. Let me take this a different approach. When I was reading what the good judge was saying and the reason for the Franks hearing, he said, and I quote, ER 46, this hearing isn't about whether the affidavit establishes probable cause or whether there was probable cause or not. I've limited the Franks hearing to your arguments that what there are material omissions in here regarding certifications and false positives. So what he's looking at in this Franks hearing is not even probable cause. It's whether there are material omissions regarding certifications and false positives. And then he says the result, there were some material to the finding of probable cause. Even if some should have been included, it was at best negligent. Now, what's my standard of review as to that determination? Which determination, Your Honor? The one determination that I just told you, the determination he made in the Franks hearing. Well, for a Franks hearing, the standard is whether, the standard for whether there are omissions or material misstatements is clear error. And so if I can't find clear error here, then there might have been some problems with certification, but at best negligence. There might have been absent information, but it's not material. And even if it would, it should have been included, it was at best negligence. I don't find anything in that transcript or in what happened here to say that's clear error. And so on appeal, how do I overturn this? That's the only way you're going to win on what happened in the Franks hearing, because it wasn't to establish probable cause. Well, Your Honor, I mean, one of the issues is we were limited to a Franks hearing. We asked . . . Well, I understand, but the Franks hearing, he tells you what you're going to get at the Franks hearing, and then he makes his determination as to what he did in the Franks hearing, and then he comes out with probable cause. Why can't I just affirm this based on the fact that you can't overturn the error in the Franks hearing because it's clear error review? Well, the judge makes a finding that based on the totality of the circumstances of what was presented at the Franks hearing, that there was probable cause. And we believe that based on . . . Well, frankly, based on what was presented at the Franks hearing, there was a certification, but at best . . . problems with certification, but at best negligence. There was absent information, but it wasn't material, or if it should have been included, it was at best negligence. And so, therefore, it didn't take away from the probable cause. The probable cause was established unless you could do something in the Franks hearing. Well, we think that based on what was presented about the dog's unsophisticated training and the possibility of contamination based on this Court's prior precedent that holds that there has to be more than just a dog alert. Well, but I guess you're . . . I guess I'm trying to suggest your argument is just arguing this isn't clear evidence, clear review, this isn't a clear determination of the facts here. Is that what you're arguing? No, Your Honor, I'm arguing . . . Because that seems to be the only thing you can argue. Well, I . . . Because the Franks hearing is the only place where you put together, if you would, all the reasons why there were problems with the certification or there were false positives. And in both of those, the Court says, isn't true. And therefore, on clear air review, I'm bound. But the Court makes a specific finding that with regard to the false positives, those are the only possibility of ready contamination. Well, but . . . What is it you'd like us to hold? We'd like you to hold that in this particular case, under this constellation of facts and circumstances where we have a dog that has not been trained to ignore trace or residual odor, and there's the possibility of easy and ready contamination of the item or object that's to be searched, that the dog's alert standing alone does not establish probable cause. A couple of problems, Counselor, you had a lot of qualifiers in there. So you said that you wanted to do it in this case, but the rule that you described after that was very, very broad, would clearly apply to many, many dog sniff cases. And then at the very end, you said that the dog sniff standing alone was not sufficient to grant probable cause, but that's not what the District Court did. So the rule that you've asked us to apply here is the one that you had to colloquy with Judge Tallman, who went through all of the other factors the District Court went through. So it doesn't apply to this case. They are the rule that you've just asked us to apply. Well, if I could briefly respond, Your Honor, I see my time is up. Yeah, your time is up. I'll give you time. The lesson I take from Gates and Harris and all of these probable cause cases is that it's a fact-determinative analysis, and it's based on common sense. And Gates, I think, in a footnote, I think it's footnote 11, says precedent in one case will very rarely be applicable to other cases. So I'm asking the Court to look at the facts and circumstances of this case, the constellation of unsophisticated training, easy and ready contamination that even the government's expert says easily happens. I've seen it in my career. The other things that are in the warrant, which are simply the package basically contains other things inside of it that are densely packed. There's no signature required, which is no, there's no evidence that that's uncommon. The address and the name matches for the receiver of the package. The sender of the package is a real address, but there's nobody associated with that name at that address, and it was shipped from Southern California. Counsel, before you sit down, I do have one last question, which is in response to something you said to Judge Smith. Are you objecting to the fact that this was a Franks hearing? Or is there something else that you wanted the District Court to do besides conduct a Franks hearing? You've got a little bit of double deference here because the District Court is going to be examining as to whether the magistrate was misled in issuing the probable cause finding in the first place. So there's a little bit of a double deference problem by the time it gets to us. So are you objecting to the fact that it was a Franks hearing? We objected to that in the District Court, and this may be a longer answer than the Court wanted to invite. Did you make that argument to us? I don't think we made the argument in that specific manner because we tailored it to the issue of probable cause, but . . . But it's a two-step process, is it not? You get the Franks hearing, but your burden at the Franks hearing is to show that material and misleading information was either put forth or excluded from the affidavit. If the District Court credits your argument with a Franks violation, then it looks at the affidavit and excises the information that was left out or which was misleading and asks whether the remaining information in the affidavit still establishes probable cause. Your problem is that you couldn't get past prong one because the District Court found that there was no Franks violation. Isn't that the analysis? Well, if I can take a step back and talk about Harris for a minute. Well, let's look at Harris. Harris says the question, similar to every inquiry into probable cause, is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test. That's what Justice Kagan said. Didn't the District Court find, applying the Harris test, that Mervyn did his job? And this may be a more esoteric answer than you're looking for, but the issue in Harris is Harris is obviously not a warrant case. So Harris, it's a dog sniff case, but it's not a warrant case. And I'll explain why that makes a difference to the analysis. So Harris says, essentially, Harris first says there's no bright-line rule, there's no rigid checklist, but then it says if you have a dog alert and the dog, and there's evidence that the dog has been trained and certified, then that's enough to establish probable cause. And the District Court spent three days listening to your expert, listening to the defense canine training expert, credited the government's training expert, discredited your expert, and found that the dog was adequately trained. And to get back to Judge Smith's question, how can we declare that to be clear error on a three-day evidentiary record? Your Honor, first of all, to answer that question based on the totality of the circumstances, I think that it's clear error. No, no, this is just a straight credibility finding. Now we're doing some of the most basic review that an appellate court judge does, and I don't redetermine who's telling the truth and who's lying. Respectfully, Your Honor, it's not a credibility determination because the court credited their witnesses in finding that there was a possibility of ready contamination. That the dog was adequately trained. But at Blue Brief, it's all about, your Blue Brief at 6 says it was a credibility determination. As far as yes, whether or not there was the possibility of ready contamination and whether or not the dog was trained in certain ways, that is a credibility determination. All right. Thank you, Mr. Jerome. Let's hear from the government. May it please the Court, good morning. Tom Muehlek for the United States. Your Honor, in our brief, I would just reiterate our brief that the district court did not clearly err in finding probable cause to issue the warrant in this case to search the priority express mail parcel that was addressed to the defendant, Roland Kalaheva. The court granted the request for a Franks hearing, held a three-day evidentiary hearing, and found that the dog alert came from a dog that was well-trained, that was successful in its training. One point that Mr. Jerome makes that is of concern to me is the question as to whether sort of the action, the trigger for the dog has been set too low. In other words, if the dog is alerting on packages that have once come in contact with drugs, but no longer contain drugs, there isn't any bulk there. It's just an odor that's left. The dog may be entirely accurate, entirely reliable, and alerting on all kinds of things that do not contain drugs. And it sounds like the trainers can sort of tweak the dog's alert system to be able to tell the difference between a strong odor and a lesser odor. So how does a court determine whether that line has been drawn in the wrong place? Well, I can tell you what the record shows as to Mervyn, this dog, Your Honor, and the record shows that Mervyn was trained not to alert on residue. That was Corporal Jeffrey Mertens' testimony. The defense brief, appellant's brief, incorrectly argues that the dog was trained on amounts less than a gram. The trainer for this dog was Corporal Jeff Mertens. Wayne Silva, the examiner, the tester, the certifier from the Honolulu Police Department, who was in a different division from the narcotics advice dog and Jeff Mertens, he was a SWAT team officer, did not train the dog. He tested the dog, and he did say that there were small amounts of crack cocaine or pieces of rock cocaine that were less than a gram that were used in the test, but the dog was trained not to alert on residue. Yeah, but you would have no way of telling that. If all you were doing was giving them little rock pieces and saying, well, these are rock pieces, but they're nevertheless are pieces, it's drugs, it's some kind of an amount, then we would have no idea how sensitive the dog's nose is. We have no idea how the dog's nose has been calibrated. Well, and I don't know— What we would have to have is some assurance that they had taken the rock cocaine, sort of rubbed it over the package, dropped the package off for a couple of days, and then brought the dog back to see whether the dog alerted on the odor. And if they can say that the dog didn't alert on this odor, then we can say, well, it looks like he's been calibrated pretty well. There's not a lot of testimony on that, Your Honor. I agree. There is testimony that the dog was trained with real drugs, and it was trained with drugs of one gram amount or more, up to five pounds. And during the test, there was a test of large quantities at times, at least that Officer Wayne Silva testified to that, both of whom were found to be credible officers, found to be credible in their testimony. The court went to great lengths to explain that the Franks hearing, steps one and two weren't met, never got to step two, because step one didn't show that there was any intentional omission or falsehood. There was no reckless intentional omission or falsehood. And the court said even if I did find those, which he did not, there was still probable cause excising the information of the certifications from the California Narcotics Canine Association and the American Working Dogs Association because the court found the third certification, done by the Honolulu Police Department, was valid, was accurate, was meaningful. Basically, the United States couldn't have better findings in this from this district court judge. They had a three-day hearing. They had the dog's training records. They had the dog's non-seizure alert records. They had the alert seizure records. They got into the postal unit and took pictures and were able to see that. They had their own expert. They got to call and cross-examine or examine Corporal Mertens, the dog handler. They got to examine the postal inspector who, as the judge found, looking at the totality of the circumstances, it was not just a well-trained dog that was alerted. It was also an experienced postal inspector who had done this for nine years, and I think his testimony was not in the affidavit, but his testimony was he had been at that facility for a couple of years and had found over 150 parcels or had found drugs in the Priority Express mail parcels 150 times. He recognized that California was a source state for drugs. He recognized that the parcel in question was densely packed. He recognized that drug dealers use Priority Express mail because they can track the package as it goes through by checking the postal website. He recognized that this parcel, the sender of the parcel in the database check that he did at the post office loading facility through a mobile device, that sender was not associated with the Rialto, California, address on the package, the Priority Express mail package, and that while the Kalaheva was associated with the Ewa Beach address, the package could be sent through and received without a signature. All those things meant that this experienced postal inspector caused him to take that package and believe it was suspicious and then run it through for the, and I'm not sure how you say this, a sophisticated or unsophisticated dog, but the dog, the trained dog, but the court found the dog was well trained and the dog alerted. In Florida v. Harris, the court talked about a well trained dog's alert. We'll show that there's a fair probability, and that's all that's required for probable cause, that drugs or drug crime will be found in that parcel. Unless the court has particular questions for me. I don't think so. Thank you. And we ask the court to affirm. Jerome, we gave you substantial additional time, but I will give you a minute for rebuttal here. Thank you, Your Honor. I appreciate being given an extra minute. I did want to address one thing that Mr. Mulek had brought up. I think that there is in the transcript, even with the testimony of Corporal Mertens, there's testimony about the dog alerting to small amounts or the use of small amounts in training. On page 119, and this is volume two of the record, he testifies. The question is, okay, what's the smallest quantity of drugs that you've used in Marvin's training? And the answer is about a gram. And then on page 134 of the transcript, about the false alerts, he's asked, okay, so Mervin was wrong, right? And he answers, well, the dog alerts to the odor of narcotics. Question, just like residual odor. Answer, the odor of drugs. Question, right. Answer, so it could be contaminated odor, could be lingering odor, residual odor. Okay, whatever you want to call it is his answer. And that's the part I don't understand. How do you train a dog that alerts to odors, not to alert to a package that has contained in the past, but does not now contain narcotics? And I think that, and I apologize, I don't have the page. Actually, I may have the page in front of me. But Steve Sloan, who was the government's expert, there was a line of questioning about, specifically about currency. And he talks about how you establish a higher threshold amount for the dog to alert to, so that in cases like currency seizures. Threshold amount of what? Of the narcotics odor you're on. Measure the odor. I mean, you know, DEA lab, I guess they still have these gas chronometers or whatever, that determine the purity of drugs. So, like, can you inject an odor into that piece of equipment? And will the equipment tell you whether, you know, can it measure the strength of the odor? I've never heard of such a thing. And, again, I think the answer is you make sure that you're using in training and certification a certain amount of the drug of a certain purity, so that you're not training the dog using a gram amount that may be 20% pure, that really is only 200 milligrams of the substance, so that the dog learns that I'm only going to alert when there's a threshold amount. And if you look at a couple of the cases the state cited, I think it's the government cited, I'm sorry, I think Hillison and Spetz, in those cases, those were active alert dogs, and the trainer said in those cases the dog would more strongly alert the more presence of the odor there was. So I think it's possible. That makes sense. I mean, the whole problem I have, I guess, and maybe this is a factual problem, dogs can smell things that humans can't. So how can we know when the dog is right and when the dog is wrong? I think you may be asking more than even dogs are capable of explaining. I don't know. And perhaps that's true, Jaron, and I think that that's why the dog sniff analysis is so challenging because it's sort of its own thing. It's not a machine. It's not an informant that you can cross-examine and ask questions about. I take it they did not bring Mervyn to court for the hearing. They did not. Okay. All right. Thank you. Thank you. We thank counsel for the argument. Kalihiwa v. United States is submitted, and with that we've completed the oral argument calendar for the week, and the court stands adjourned.
judges: Tallman, Bybee, N.R. Smith